**JENNER & BLOCK LLP**
Kate T. Spelman (Cal. Bar No. 269109)
kspelman@jenner.com
633 West 5th Street, Suite 3600
Los Angeles, CA 90071
Telephone:     (213) 239-5100
Facsimile:      (213) 239-5199

*Attorney for Defendant*
Clearview AI, Inc.

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEVEN RENDEROS, VALERIA THAIS, SUÁREZ ROJAS, REYNA MALDONADO, LISA KNOX, MIJENTE SUPPORT COMMITTEE, and NORCAL RESIST FUND, | Case No. |
| Plaintiffs, | **CLEARVIEW AI, INC.'S NOTICE OF REMOVAL** |
| v. | [County of Alameda Superior Court Case No. RG21096898] |
| CLEARVIEW AI, INC., ALAMEDA COUNTY DISTRICT ATTORNEY, ALAMEDA POLICE DEPARTMENT, EL SEGUNDO POLICE DEPARTMENT, ANTIOCH POLICE DEPARTMENT, and DOES 1-10 | |
| Defendants. | |

TO THE CLERK OF THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that Defendant Clearview AI, Inc. ("Clearview") hereby effects the removal of this action from the Superior Court of the State of California for the County of Alameda ("County of Alameda Superior Court") to the United States District Court for the Northern District of California. Removal is proper under 28 U.S.C. § 1332(a) because the properly joined parties have complete diversity of citizenship and the amount in controversy exceeds $75,000. Venue is proper in this Court because it is the "district and division embracing the place where [the] action is pending." 28 U.S.C. § 1441(a). Pursuant to 28 U.S.C. § 1446(a), a true and correct copy of the state court case file is attached to this Notice of Removal and is incorporated by reference herein. The file includes all process, pleadings, motions, and orders filed in this case, including the Summons and Complaint (Ex. 1) and all other documents filed in the state court (Ex. 2).

## FACTUAL BACKGROUND AND STATE COURT PROCEEDINGS

1. This action is one of many filed against Clearview in courts across the country—from California to Illinois to New York—based on nearly identical allegations and asserting substantively identical theories of relief. Specifically, nine federal lawsuits filed against Clearview have been transferred for coordinated multidistrict litigation ("MDL") proceedings before Judge Sharon Johnson Coleman in the United States District Court for the Northern District of Illinois (the "MDL Court"). *See In Re: Clearview AI, Inc.*, *Consumer Privacy Litigation*, MDL No. 2967. The consolidated MDL action has a putative California subclass that includes Plaintiffs here and asserts the same claims against Clearview. Plaintiffs are desperately attempting to keep their case in state court and avoid having their case transferred into the MDL action, but there can be no doubt that diversity jurisdiction exists here.

2. On April 22, 2021, Plaintiffs filed this Complaint in the County of Alameda Superior Court against Clearview and four California-based government entities (the "Municipal Defendants"). Plaintiffs allege that Clearview downloads the images of millions of individuals from the Internet, extracts biometric information from these images, and then uses artificial intelligence technology to analyze the information and create a so-called "faceprint" of these individuals. This, in turn, allegedly allows Clearview users to

upload a "probe image" to the Clearview application and learn certain information about the person in the probe photo, which Plaintiffs allege permanently deprives individuals of their anonymity and privacy and disproportionately misidentifies people of color. *See* Ex. 1, ¶¶ 29-40.

3. Plaintiffs also allege that the Municipal Defendants are four of the thousands of users of the Clearview application, but Plaintiffs allege almost nothing about these Municipal Defendants except that they used Clearview's technology. Ex. 1, ¶¶ 6, 73-75. As described below, the inclusion of the Municipal Defendants in the current iteration of the Complaint was designed solely to defeat diversity jurisdiction.

4. On March 9, 2021, the same Plaintiffs, represented by the same counsel, filed an earlier complaint in the County of Alameda Superior Court alleging substantively identical facts and claims against Clearview, which was then the only named defendant. *See Renderos, et al. v. Clearview AI, Inc. et al.*, Alameda Sup. Ct. Case No. RG21091138. Attached to this Notice of Removal, and incorporated by reference herein, is a copy of that previously-filed complaint (Ex. 3). The thrust of the prior complaint— much like the instant action and other similar actions already pending in the MDL—was that Clearview's conduct allegedly violated Plaintiffs' right to privacy and unlawfully misappropriated their likenesses.

5. In that proceeding, on April 8, 2021, Clearview timely filed a notice of removal under 28 U.S.C. § 1332(a), removing the case to the United States District Court for the Northern District of California. *See Renderos et al. v. Clearview AI, Inc. et al.*, 4:21-CV-02567 (DMR) (N.D. Cal.), Dkt. 1.

6. After removal was effectuated, Plaintiffs informed Clearview for the first time that Plaintiffs had faxed an amended complaint to the Clerk of the County of Alameda Superior Court prior to the filing of the notice of removal. Attached to this Notice of Removal, and incorporated by reference herein, is a copy of the amended complaint in *Renderos, et al. v. Clearview AI, Inc. et al.*, Alameda Sup. Ct. Case No. RG21091138 (Ex. 4). Plaintiffs did not serve this amended complaint on Clearview until after Clearview filed its notice of removal.

7. In a transparent attempt to defeat diversity jurisdiction, Plaintiffs' amended complaint named several California-based government entities as defendants—the same Municipal Defendants now named as defendants in the instant proceeding. *See* Ex. 4. However, because Clearview was not served with the amended complaint (or even aware of it) until after Clearview filed its notice of removal,

Clearview properly removed the original and operative complaint.  The law is clear on this point.  *See, e.g.*, *Goldberg v. Cameron*, No. 5:15-CV-02556-RMW, 2015 WL 5316339, at *3 (N.D. Cal. Sept. 11, 2015) ("Because the amended complaint [was] not served by the time defendants filed the notice of removal, the original complaint was the operative complaint in the case."), *aff'd* 694 F. App'x 564 (9th Cir. 2017); *Noorazar v. BMW of N. Am., LLC*, No. 18-CV-02472 W (JLB), 2019 WL 442477, at *2 (S.D. Cal. Feb. 5, 2019) ("[I]n California an amended complaint supersedes the original for the purpose of removal only when served upon the affected defendant.  A contrary rule would vitiate the removal statute and allow for procedural manipulation.").

8.      Following removal of the original action to the Northern District of California, Clearview filed a Notice of Potential Tag-Along Action with the Clerk of the JPML on April 13, 2021, identifying the matter for transfer to the MDL Court in the Northern District of Illinois, where numerous similar actions had been consolidated for pre-trial proceedings.  *In Re: Clearview AI, Inc.*, *Consumer Privacy Litigation*, MDL No. 2967, Dkt. 53.  On April 15, 2021, the Clerk of the JPML entered a conditional transfer order to transfer the case to the MDL Court.  *In Re: Clearview AI, Inc.*, *Consumer Priv. Litig.*, MDL No. 2967, Dkt. 55.  The conditional transfer order observed that the matter involved "questions of fact that are common to the actions previously transferred" and assigned to the MDL Court.  *Id*.

9.      After the MDL transfer was complete, Plaintiffs could have sought leave to amend their complaint to join the Municipal Defendants.  But instead, in a transparent effort to avoid the MDL Court, Plaintiffs immediately and voluntarily dismissed their complaint altogether.  *See Renderos et al. v. Clearview AI, Inc. et al.*, 4:21-CV-02567 (N.D. Cal.), Dkt. 7.

10.     One week later, on April 22, 2021, the same group of Plaintiffs represented by the same counsel refiled their Complaint in state court, alleging the same facts and claims against Clearview.  *See* Ex. 1.  This Complaint is substantively duplicative of Plaintiffs' aborted amended complaint in the prior *Renderos* action.  *See* Ex. 4.  And just like their prior amended complaint, the Complaint names several California-based government entities as defendants in an attempt to defeat diversity jurisdiction and avoid removal and transfer to the MDL Court.  *See* Ex. 1, ¶¶ 22-25.

11.     Also on April 22, 2021, Plaintiffs filed a Notice of Related Case, identifying the instant

proceeding as "related" to *Renderos, et al. v. Clearview AI, Inc. et al.*, Alameda Sup. Ct. Case No. RG21091138, which was the prior action filed by Plaintiffs, later removed to federal court and voluntarily dismissed.  In the Notice of Related Case, Plaintiffs indicated that the two cases "arise[] from the same or substantially identical transactions, incidents, or events requiring the determination of the same or substantially identical questions of law or fact."  *See* Ex. 2, Notice of Related Case.  The Notice of Related Case also identified the instant proceeding as "related" to *Renderos et al. v. Clearview AI, Inc. et al.*, 4:21-CV-02567 (DMR) (N.D. Cal.).

12.     Based on this procedural history, it is clear that the refiled Complaint is, practically and constructively, nothing more than an amendment to Plaintiffs' original complaint in *Renderos, et al. v. Clearview AI, Inc.*, Alameda Sup. Ct. Case No. RG21091138.

13.     In the Complaint, Plaintiffs allege three causes of action against Clearview for common law appropriation of likeness, violation of Article I, Section 1 of the California Constitution, and violation of California's Unfair Competition Law.  These allegations and causes of action are identical to those in Plaintiffs' original complaint and amended complaint in *Renderos, et al. v. Clearview AI, Inc.*, Alameda Sup. Ct. Case No. RG21091138.  *Compare* Ex. 1, ¶¶ 69-83 *with* Ex. 3, ¶¶ 76-87 and Ex. 4 ¶¶ 77-88. Further, these claims are virtually identical to and subsumed within the claims alleged against Clearview by the California subclass of the MDL.  *See* Consolidated Class Action Complaint, *In Re: Clearview AI, Inc., Consumer Priv. Litig.*, 1:21-cv-00135 (N.D. Ill.), Dkt. 29.

14.     Plaintiffs allege two separate and distinct causes of action against the Municipal Defendants for aiding and abetting a tort and violation of Article I, Section 2(a) of the California Constitution.  *See* Ex. 1, ¶¶ 91-98.  These allegations and causes of action are identical to those in Plaintiffs' amended complaint in *Renderos, et al. v. Clearview AI, Inc.*, Alameda Sup. Ct. Case No. RG21091138.  *See* Ex. 4, ¶¶ 92-99.

15.     Plaintiffs seek injunctive relief, compensatory damages (including emotional distress damages), attorneys' fees, and other relief as equity and justice may require.  *See* Ex. 1, Prayer for Relief.

## **REMOVAL IS PROPER UNDER 28 U.S.C. § 1332(A)**

16.     Pursuant to 28 U.S.C. § 1332(a), federal courts have original jurisdiction over all cases in which the amount in controversy exceeds $75,000 and is between "citizens of different States."  Under 28

U.S.C. § 1441(a), any such action may be removed to the district court for the district and division embracing the place where the action is pending.

## I.   There Is Complete Diversity Of Citizenship Between The Properly Joined Parties

17.   The individual Plaintiffs are citizens of California.  According to the Complaint, Plaintiffs Renderos, Suárez, and Knox are residents of Alameda County, and Plaintiff Maldonado is a resident of Oakland, which is also in Alameda County.  Ex. 1, ¶¶ 12-16.

18.   The corporate Plaintiffs, NorCal Resist Fund and Mijente Support Committee, are citizens of California and Arizona, respectively.  According to the complaint, Plaintiff NorCal Resist Fund is a California corporation, and Plaintiff Mijente Support Committee is an Arizona corporation.  Ex. 1, ¶¶ 16-17.

19.   Clearview is a citizen of Delaware and New York because it is a Delaware corporation with its principal place of business in New York.  Ex. 1, ¶ 19.

20.   Because Plaintiffs and Clearview—the only properly joined defendant—are citizens of different states, there is complete diversity of citizenship under 28 U.S.C. § 1332(a)(1).

## II.   The Municipal Defendants Are Fraudulently Joined Under 28 U.S.C. § 1447(E)

21.   The Municipal Defendants are fraudulently joined in this action, and their citizenship should be disregarded for purposes of removal.  *Ritchey v. Upjohn Drug Co.*, 139 F.3d 1313, 1318 (9th Cir. 1998) (holding that fraudulently joined defendants do not defeat diversity jurisdiction).

22.   As discussed above, a substantively identical action was previously filed in the County of Alameda Superior Court and properly removed to federal court in *Renderos et al. v. Clearview AI, Inc. et al.*, 4:21-cv-02567 (DMR) (N.D. Cal.).  After removal, Plaintiffs served Clearview with an amended complaint that fraudulently joined several California-based government agencies as defendants.[1]  *See* Ex. 4.  But before the amended complaint was served on Clearview, the JPML entered a conditional transfer order to transfer the case to the MDL Court, at which point Plaintiffs voluntarily dismissed the action.

23.   Almost immediately following that dismissal, Plaintiffs refiled the *same* amended

---

[1] A defendant is permitted to "introduce evidence beyond the pleadings to establish fraudulent joinder." *Rivas v. Target Corp.*, No. ED-CV-19-905-DMG (SPx), 2019 WL 3237375, at *2 (C.D. Cal. July 18, 2019) (citing *Ritchey*, 139 F.3d at 1318).

complaint as a new (but "related") proceeding. *See* Ex. 1. Courts have criticized this practice of voluntarily dismissing and refiling a complaint to add fraudulently joined parties and have recognized it for what it is: a "brazen" attempt at forum-shopping. *See Welk v. GMAC Mortg., LLC*, 850 F. Supp. 2d 976, 981, 999 (D. Minn. 2012) (criticizing plaintiffs' counsel for fraudulently joining non-diverse defendants in a state court action, and—following removal and denial of plaintiffs' remand motion—choosing to "'remand' the case himself by voluntarily dismissing it and refiling it in state court within a day or two, thereby starting the process all over again."), *aff'd*, 720 F.3d 736 (8th Cir. 2013). The current Complaint is therefore constructively an amendment to the previously-filed complaint in *Renderos, et al. v. Clearview AI, Inc. et al.*, Alameda Sup. Ct. Case No. RG21091138.

24.    Where a plaintiff "amends her complaint after removal to add a diversity destroying defendant"—as Plaintiffs did here by refiling a substantively identical Complaint—courts analyze the joinder of new parties under 28 U.S.C. § 1447(e). *Greer v. Lockheed Martin*, 10-CV-1704 JF HRL, 2010 WL 3168408, *3-4 (N.D. Cal. Aug. 10, 2010). Specifically, § 1447(e) provides that, "[i]f after removal the plaintiff seeks to join additional defendants whose joinder would destroy subject matter jurisdiction, the court may deny joinder." 28 U.S.C. § 1447(e).

25.    Courts consider several factors when deciding whether to permit or deny joinder under 28 U.S.C. § 1447(e), including: (1) whether the party sought to be joined is needed for just adjudication; (2) whether the statute of limitations would prevent the filing of a new action against the new defendant in state court; (3) whether there has been an unexplained delay in seeking to join the new defendant; (4) whether plaintiff seeks to join the new party to defeat federal jurisdiction; and (5) the strength of the claims against the new defendant. *Greer*, 2010 WL 3168408, at *4. Courts may also consider a sixth factor, the prejudice to the plaintiff if joinder is not permitted. *Waring v. Geodis Logistics LLC*, 19-CV-4415-GW-KSX, 2019 WL 3424955, at *6 (C.D. Cal. July 29, 2019). And additional factors can include "the closeness of the relationship between the new and the old parties, the effect of an amendment on the court's jurisdiction, and the new party's notice of the pending action." *In re Outlaw Lab., LP Litig.*, 3:18-CV-1882-GPC-BGS, 2020 WL 434477, at *4 (S.D. Cal. Jan. 28, 2020) (quoting *Desert Empire Bank v. Ins. Co. of N. Am.*, 623 F.2d 1371, 1375 (9th Cir. 1980)).

26.     Every one of these factors supports a finding of fraudulent joinder.[2]

**A.      The Municipal Defendants Are Not Needed for Just Adjudication**

27.     As to the first factor, "courts generally disallow joinder of non-diverse defendants where those defendants are only tangentially related to the cause of action or would not prevent complete relief." *Jones v. Thyssenkrupp Elevator*, C-05-3539 EMC, 2005 WL 8177458, at *17 (N.D. Cal. Dec. 22, 2005) (citation omitted).  Here, the Municipal Defendants are "only tangentially related" because the Complaint contains nothing more than a handful of conclusory allegations against them.  None of the Municipal Defendants is an "indispensable party" or "necessary for just adjudication" of Plaintiffs' claims against Clearview—rather, the refiled Complaint alleges completely new claims against the Municipal Defendants that are separate and distinct from Plaintiffs' claims against Clearview.  *Id.*

28.     In fact, "it is not clear that [the Municipal Defendants'] conduct arises from the same transaction or occurrence as the conduct animating . . . the underlying suit" and their joinder "seems almost an afterthought to the instant [Complaint]." *Outlaw Lab.*, 2020 WL 434477, at *5.  The entire focus of the Complaint is that Clearview allegedly "scraped" images from Internet websites, captured "biometric signature[s]" from those images, and sold access to a database containing that "biometric" information. Ex. 1, ¶¶ 2-5.  However, the Municipal Defendants are not alleged to be involved in any of this alleged conduct.  *Id.* ¶¶ 73-75.

29.     It is therefore "unlikely that requiring Plaintiff[s] to sue [the Municipal Defendants] in state court would not allow Plaintiff[s] and [Clearview] to reach a complete and just resolution in federal court"—particularly where the allegations and claims involved are distinct, and separate lawsuits would not "lead to wholly or even mostly redundant actions."  *Waring*, 2019 WL 3424955, at *4 (denying a motion to remand based on attempted joinder of non-diverse parties).  Accordingly, this factor weighs in favor of a finding that the Municipal Defendants were fraudulently joined and that removal is proper.

---

[2] Even if the Court concludes that the 28 U.S.C. § 1447(e) standard does not apply to the joinder analysis here because Plaintiffs' refiled their Complaint anew (after voluntarily dismissing the prior action, rather than properly amending their complaint before the MDL Court), the Court should still find the Municipal Defendants were fraudulently joined because, as explained below in ¶¶ 37-57, Plaintiffs: (1) fail to state a cause of action against them and (2) the failure is obvious according to the settled case law of the state. *McCabe v. Gen. Foods Corp.*, 811 F.2d 1336, 1339 (9th Cir. 1987).

**B.     The Statute of Limitations Does Not Preclude Severance of the Claims**

30.     The second factor involves an assessment of whether the statute of limitations would preclude an original action in state court against the fraudulently joined defendants. *Id*. As of the date of this Notice of Removal, a separate suit against the Municipal Defendants in state court would not be time-barred.

31.     "The statute of limitations for a cause of action for aiding and abetting a tort generally is the same as the underlying tort." *Am. Master Lease LLC v. Idanta Partners, Ltd.*, 225 Cal. App. 4th 1451, 1478 (Cal. Ct. App. 2014). Plaintiffs do not allege an underlying tort, Ex. 1, ¶¶ 92-95, but to the extent they do, the underlying tort would be one of the claims against Clearview. Of those, the statute of limitations for a claim of common law appropriation of likeness is two years, *Christoff v. Nestle USA, Inc.*, 213 P.3d 132, 135 (Cal. 2009); it is one year for a claim of invasion of privacy under Article I, Section 1 of the California Constitution, *Cain v. State Farm Mut. Auto. Ins. Co.*, 62 Cal. App. 3d 310, 313 (Ct. App. 1976), and four years for an Unfair Competition Law claim, Cal. Bus. & Prof. Code § 17208. The Article I, Section 2(a) claim has a statute of limitations of one year. *Gatto v. County of Sonoma*, 98 Cal. App. 4th 744, 760 (Cal. Ct. App. 2002).

32.     There are no factual allegations in the Complaint suggesting that the limitations period has elapsed for either claim against the Municipal Defendants in the few weeks since the Complaint was filed. Because a separate state court action would not be time-barred any more the instant action is, this factor weighs against the joinder of the Municipal Defendants.

**C.     There Was Unexplained Delay in Plaintiffs' Joinder of the Municipal Defendants**

33.     As to the third factor of whether Plaintiffs delayed in seeking to join the non-diverse parties, "the timing of joining [the Municipal Defendants] is suspect." *Waring*, 2019 WL 3424955, at *4. After attempting to amend their prior complaint to join the non-diverse Municipal Defendants, Plaintiffs voluntarily dismissed their prior complaint immediately after the entry of JPML's conditional transfer order. Then, Plaintiffs refiled a substantively identical Complaint and named the same Municipal Defendants they had previously tried (and failed) to join through an amended complaint in their prior action. Such gamesmanship should not be tolerated.

34.     Nor do Plaintiffs have a "good reason for why the claims against" the Municipal Defendants were not brought in their original complaint. *Id*.   That is because "all the facts now alleged" in the Complaint regarding the Municipal Defendants "were known" or available to Plaintiffs when they first filed their prior complaint, and the substantively identical refiled Complaint "is not based on newly discovered evidence." *Jones*, 2005 WL 8177458, at *21.   "This factor weighs against joinder." *Id*.

### D.     Plaintiffs' Motive in Joining the Municipal Defendants Was to Defeat Federal Jurisdiction

35.     Courts recognize that the most important factor in this analysis is Plaintiffs' motive to defeat diversity jurisdiction. *See Bakshi v. Bayer Healthcare*, LLC, C07-00881 CW, 2007 WL 1232049, at *4-5 (N.D. Cal. Apr. 26, 2007).   "A trial court should look with particular care at a plaintiff's motive in removal cases, when the presence of a new defendant will defeat the court's diversity jurisdiction and will require a remand to the state court." *Waring*, 2019 WL 3424955, at *5 (citation omitted).   "In such cases, a plaintiff may well be inclined to add a new defendant only to have his action remanded to the state forum, the one that he had originally chosen as best suited to his purposes." *Ommid v. Liberty Mut. Ins. Co.*, 3:18-CV-0486-L-WVG, 2018 WL 6191392, at *3 (S.D. Cal. Nov. 27, 2018) (quoting *Desert Empire Bank*, 623 F.2d at 1376-77).

36.     As discussed in detail above, the procedural history of this litigation, the "unexplained delay" in asserting the new claims against the Municipal Defendants, and the suspect "timing" of Plaintiffs' refiled Complaint—"coming after removal" and after their voluntary dismissal of the prior proceeding—"suggest[] an intent to defeat federal jurisdiction." *Jones*, 2005 WL 8177458, at *21.   This factor weighs heavily against joinder of the Municipal Defendants.

### E.     Plaintiffs' Claims against the Municipal Defendants Are Not Viable

37.     The fifth factor requires an analysis of the strength of the claims against the newly joined defendants.   Here, Plaintiffs allege two causes of action against the Municipal Defendants for aiding and abetting a tort and violation of Article I, Section 2(a) of the California Constitution. *See* Ex. 1, ¶¶ 91-98. As explained below, neither of these claims is "strong"—quite the opposite, both claims are subject to dismissal under well-settled law.

### 1. Aiding and Abetting a Tort

38.     The aiding and abetting a tort claim fails for at least three reasons:  (1) the California Tort Claims Act precludes liability in these circumstances; (2) Plaintiffs fail to state an underlying claim against Clearview; and (3) Plaintiffs fail to allege any facts that could support an aiding and abetting claim.

### a. California Tort Claims Act

39.     As a threshold matter, the tort liability of public entities in California is governed by the California Tort Claims Act ("CTCA").  *See* Cal. Gov't. Code, §§ 810 *et seq*.  Here, all of the named defendants other than Clearview are indisputably public entities.  *See* Cal. Gov't Code § 900.4 ("'Local public entity' includes a county, city, district, public authority, public agency, and any other political subdivision or public corporation in the State").  The CTCA provides that a public entity is "not liable for an injury" at common law.  Cal. Gov't. Code § 815.  As the legislative notes to § 815 explain, "public entities may be held liable only if a statute . . . is found declaring them to be liable" and "the practical effect of this section is to eliminate any common law governmental liability for damages arising out of torts."  Cal. Gov. Code § 815 legislative committee comments (2021).  "Consequently, all government tort liability must be based on a statute."  *Brooks v. City of Fremont*, C07-06458 JSW, 2008 WL 1994889, at *8 (N.D. Cal. May 5, 2008) (citation omitted).  Here, Plaintiffs fail to cite any statutory basis for their aiding and abetting a tort claim against the Municipal Defendants.  As a result, this claim must be dismissed.  *See, e.g.*, *Forbes v. Cty. Of San Bernardino*, 101 Cal. App. 4th 48, 52-53 (Cal. Ct. App. 2002) (dismissing without leave to amend a tort claim against a public entity, where the complaint alleged no statutory basis for liability).

### b. No Underlying Claim Against Clearview

40.     Moreover, the aiding and abetting claim against the Municipal Defendants is not viable because Plaintiffs fail to state any underlying tort claim against Clearview.  *See In re Mortg. Elec. Registration Sys., Inc.*, 754 F.3d 772, 786 (9th Cir. 2014) (applying California law) ("Aiding-and-abetting liability depends on the existence of an underlying tort."); *Goonewardene v. ADP, LLC*, 5 Cal. App. 5th 154, 187-89 (Cal. Ct. App. 2016); *Valbuena v. Law Offices of Les Zieve*, No. E067927, 2018 WL 4356796, at *7 (Cal. Ct. App. Sept. 13, 2018) (same).

*Common Law Appropriation of Likeness*

41.     The first cause of action against Clearview is common law appropriation of likeness. Plaintiffs allege that Clearview unlawfully "used" their likenesses "for the purposes of commercial profit" by "selling access" to their likenesses.  Ex. 1, ¶¶ 79-80.

42.     But the tort of common law appropriation of likeness does not extend to any and all commercial activity—it protects only the "right to prevent others from misappropriating the economic value generated . . . through the *merchandising* of the 'name, voice, signature, photograph, or likeness' of the [holder].'"  *Timed Out, LLC v. Youabian, Inc.*, 229 Cal. App. 4th 1001, 1006 (2014) (emphasis added); *see also Maloney v. T3Media, Inc.*, 853 F.3d 1004, 1010 (9th Cir. 2017) (holding that the "core" of the right of publicity is preventing "*merchandising* [of] a celebrity's image without that person's consent" (emphasis added)); *see also Hilton v. Hallmark Cards*, 599 F.3d 894, 905 n.7 (9th Cir. 2010) (noting that a greeting card bearing a celebrity's  likeness was a product rather than an advertisement, and was protected); *Aldrin v. Topps Co., Inc.*, No. CV 10-09939 DDP (FMOX), 2011 WL 4500013, at *3 (C.D. Cal. Sept. 27, 2011) (holding that the right of publicity does not prohibit use of a likeness for sharing information).

43.     "The allegations about how [Clearview] shared the plaintiffs' information with third parties is categorically different from the type of conduct made unlawful by this tort, such as using a plaintiff's face or name to promote a product or service."  *In re Facebook, Inc., Consumer Priv. User Profile Litig.*, 402 F. Supp. 3d 767, 803 (N.D. Cal. 2019).  Nowhere does the Complaint allege that Clearview used Plaintiffs' likenesses in advertising or merchandising.  Plaintiffs state that their information is a part of a Clearview database that some clients pay to access—and according to Plaintiffs' theory, Clearview gathered this information from publicly-available photographs on the Internet for further dissemination to the public, not for use in advertising or merchandising.  Ex. 1, ¶¶ 2-5, 12-18, 29, 63-64, 87.  Plaintiffs' claim for common law misappropriation of likeness is not viable, because that claim simply has nothing to do with Clearview's alleged conduct or business model.  As a result, this claim against Clearview cannot serve as the underlying claim for an aiding and abetting claim against the Municipal Defendants.

1

*Constitutional Right to Privacy*

2      44.     The second cause of action against Clearview asserts a violation of Article I, Section 1 of

3  the California Constitution for invasion of privacy.  "The California Constitution sets a 'high bar' for

4  establishing an invasion of privacy claim."  *In re Yahoo Mail Litig.*, 7 F. Supp. 3d 1016, 1038 (N.D. Cal.

5  2014).  To clear this bar, Plaintiffs must plead (1) a legally protected privacy interest; (2) a reasonable

6  expectation of privacy in the circumstances; and (3) a serious invasion of privacy constituting "an egregious

7  breach of . . . social norms."  *Hill v. Nat'l Collegiate Athletic Ass'n*, 7 Cal. 4th 1, 35–37 (1994).  But

8  Plaintiffs cannot plead any of these three elements.

9      45.     First, Plaintiffs fail to allege any legally protected privacy interest.  Plaintiffs state neither

10  an informational interest—which pertains to "the dissemination or misuse of sensitive and confidential

11  information" that, if disclosed, could cause "unjustified embarrassment or indignity"; nor an autonomy

12  interest—which shields "intimate personal decisions" from "observation" or "intrusion."  *Pioneer Elecs.*

13  *(USA), Inc. v. Superior Ct.*, 40 Cal. 4th 360, 370 (2007).  Plaintiffs do not and cannot allege that Clearview

14  gathered and misused extremely personal and sensitive information—Clearview did not, for example,

15  disclose anyone's mental health records, HIV-positive status, or sexual history.  *Cf. Botello v. Morgan Hill*

16  *Unified Sch. Dist.*, No. C09-02121 (HRL), 2009 WL 3918930, at *5 (N.D. Cal. Nov. 18, 2009) (sexual

17  history); *Susan S. v. Israels*, 55 Cal. App. 4th 1290, 1293 (Cal. Ct. App. 1997) (mental health records);

18  *Urbaniak v. Newton*, 226 Cal. App. 3d 1128, 1133 (Cal. Ct. App. 1991) (HIV-positive status).

19      46.     Second, Plaintiffs fail to show that they had a reasonable expectation of privacy over their

20  publicly-posted photographs.  To prevail on this claim, "the plaintiff must have conducted himself or

21  herself in a manner consistent with an actual expectation of privacy."  *Moreno v. Hanford Sentinel, Inc.*,

22  172 Cal. App. 4th 1125, 1129 (Cal. Ct. App. 2009); *see also Yahoo Mail*, 7 F. Supp. 3d at 1037-38.  In

23  *Moreno*, the court dismissed the plaintiff's constitutional privacy claim, which was based on allegations

24  that a newspaper invaded the plaintiff's privacy by disseminating content posted on her Myspace page.

25  *Moreno*, 172 Cal. App. 4th at 1130.  The court concluded that "no reasonable person would have had an

26  expectation of privacy" under the circumstances, after the plaintiff's "affirmative act" of posting the

27  content online made it "available to any person with a computer and thus opened it to the public eye."  *Id*.;

28

*see also Smith v. Daily Mail Pub. Co.*, 443 U.S. 97, 103 (1979) ("Once the 'truthful information (is) 'publicly revealed' or in the 'public domain' a court may not constitutionally restrain its publication"); *Guest v. Leis*, 255 F. 3d 325, 333 (6th Cir. 2001) ("Users [of the Internet] would logically lack a legitimate expectation of privacy in the materials intended for publication or public posting.").  Likewise, Plaintiffs had no reasonable expectation of privacy over content they uploaded to public websites on the Internet. Ex. 1, ¶¶ 12-18.

47.    Third, Plaintiffs cannot establish an egregious breach of social norms because courts routinely refuse to characterize the collection or dissemination of certain personally identifying information as "egregious" violations.  *See, e.g.*, *Stern v. Weinstein*, CV-09-1986-GHK (PLAX), 2010 WL 11459791, at *6 (C.D. Cal. Jan. 6, 2010) (the complaint did "not present a sufficiently serious invasion of privacy" where "Plaintiff voluntarily shared" his information, and there was no "unauthorized accessing or disclosure of sensitive medical information or comparably sensitive or embarrassing information."), *aff'd*, 512 F. App'x 701 (9th Cir. 2013); *In re Google, Inc. Priv. Policy Litig.*, 58 F. Supp. 3d 968, 973-74 987–88 (N.D. Cal. 2014) (the disclosure of names, identities, contact lists, private user information, and contents of communications to third-parties was not highly offensive).  Plaintiffs' claim is especially weak because Plaintiffs themselves voluntarily disclosed their own information.  Ex. 1, ¶¶ 12-18.

<u>Unfair Competition Law</u>

48.    The third cause of action against Clearview under California's Unfair Competition Law ("UCL") is also not viable.  To have standing to pursue this claim, Plaintiffs must show that they "lost money or property" because of Clearview's conduct.  *Huynh v. Quora, Inc.*, No. 18-CV-07597-BLF, 2019 WL 11502875, at *6 (N.D. Cal. Dec. 19, 2019); *see also* Cal. Bus. & Prof. Code § 17204.  Plaintiffs lack standing to bring this claim because they did not pay money to Clearview, or lose money or property due to any of Clearview's alleged conduct.  And contrary to what Plaintiffs may assert, personal information is not property for purposes of standing under the UCL.  *See In re Facebook Priv. Litig.*, 791 F. Supp. 2d 705, 714 (N.D. Cal. 2011), *aff'd*, 572 F. App'x 494 (9th Cir. 2014) ("personal information does not constitute property for purposes of a UCL claim" (citation omitted)), *aff'd*, 572 F. App'x 494 (9th Cir. 2014).  Accordingly, the UCL claim fails at the outset for lack of standing.

49.     Plaintiffs also cannot allege that Clearview's conduct was "unfair" because claims of "unfair" conduct are available only in the context of *competition* claims, which Plaintiffs have not alleged here (nor could they).  *See Durell v. Sharp Healthcare*, 183 Cal. App. 4th 1350, 1366 (Cal. Ct. App. 2010).

50.     And Clearview's alleged conduct was not "unlawful": Plaintiffs' UCL claim is derivative of their common law misappropriation and constitutional privacy claims, which—as explained in ¶¶ 41-47, *supra*—fail on their face.   The same is true for Plaintiffs' UCL claim premised on statutory misappropriation of likeness under § 3344(a)—much like the common law tort, the statute applies only where a person "knowingly uses another's . . . photograph[] or likeness . . . *on or in products, merchandise, or for goods, or for purposes of advertising or selling, or soliciting purchases.* . . ."  Cal Civ. Code § 3344(a) (emphasis added); *see also Callahan v. Ancestry.com Inc.*, 20-cv-08437, 2021 WL 783524, at *5 (N.D. Cal. Mar. 1, 2021) (dismissing § 3344(a) claim because "Ancestry's use of the plaintiffs' profiles does not imply an endorsement of Ancestry's products").  As explained above, Clearview did not use Plaintiffs' likenesses in advertising or merchandising.

51.     The remainder of Plaintiffs' UCL claim is unsalvageable.  Plaintiffs also premise this claim on an alleged violation of § 502 of the California penal code.  But courts have explained that a § 502 violation requires a showing that Clearview "overcame a technical barrier in order to view and copy [Plaintiffs'] proprietary information" and "a simple violation of the terms of use" does not meet this requirement.  *Enki Corp. v. Freedman*, No. 13–cv–2201–PSG, 2014 WL 261798, at *3 (N.D. Cal. Jan. 23, 2014); *see also hiQ Labs, Inc. v. LinkedIn Corp.*, 273 F. Supp. 3d 1099, 1115 & n.13 (N.D. Cal. 2017), *aff'd*, 938 F.3d 985 (9th Cir. 2019) (granting preliminary injunction to prevent LinkedIn from blocking hiQ Labs from "scraping" information in publicly available LinkedIn member profiles, noting that "section 502 defines 'access' in terms redolent of 'hacking' or breaking into a computer").  Plaintiffs do not allege that Clearview hacked into social media websites to access their data—nor could they.  As a result, this claim fails as well.[3]

---

[3] Plaintiffs also claim that Clearview violated the UCL by violating the "the terms of use of the various websites."  Ex. 1, ¶ 88.  This allegation is not actionable under the UCL, which only permits "unlawful" claims if they are premised on statutory, regulatory, or court-made law.  The Complaint does not tie this "terms of use" allegation to any such law, and accordingly, it provides no basis for an "unlawful" claim. *See Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1044 (9th Cir. 2010) ("[Plaintiff] must also allege that [defendant] engaged in a business practice 'forbidden by law, be it . . . statutory, regulatory,

### c.     No Aiding and Abetting Claim

52.     Under California law, a defendant is liable for aiding and abetting only if it (1) knows that a specific third party will commit a tort against the plaintiff, and (2) provides "substantial assistance or encouragement" to the tortfeasor, which (3) plays a "substantial factor" in causing the plaintiff's harm. *See* CACI No. 3610 (aiding and abetting jury instruction).  In describing the contours of aiding-and-abetting liability, courts have made clear that the defendant must have "acted *with the intent* of facilitating the commission of that tort." *Gerard v. Ross*, 204 Cal. App. 3d 968, 983 (1988) (emphasis added); *see also Howard v. Superior Court*, 2 Cal. App. 4th 745, 749 (1992) ("[A]iding and abetting . . . necessarily requires a defendant to reach a conscious decision to participate in tortious activity for the purpose of assisting another in performing a wrongful act.").  The narrow scope of aiding-and-abetting liability reflects the well-established principle that "one owes no duty to control the conduct of another." *Fiol v. Doellstedt*, 50 Cal. App. 4th 1318, 1326 (1996) (citation omitted).

53.     The allegations in the Complaint cannot satisfy these requirements.  Plaintiffs claim that Clearview violated the law when it allegedly "scraped" images from Internet websites, captured "biometric signature[s]" from those images, and sold access to a database containing that "biometric" information. Ex. 1, ¶¶ 2-5.  Plaintiffs advance a novel theory that Clearview *customers* that supposedly have "access" to the database are also liable for "aiding and abetting" all of Clearview's alleged underlying conduct, simply by using Clearview's technology.  This theory is unfounded, and Clearview is unaware of any case law holding that an aiding and abetting claim can be premised on an underlying invasion of privacy claim, or that a *customer* of an alleged tortfeasor is liable as an "aider and abettor" of the tortfeasor's conduct, simply by virtue of purchasing a product or service.

54.     Further, Plaintiffs fail to plead any of the elements of an aiding and abetting claim.  A defendant to an aiding and abetting claim is liable only if he or she "knows the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other to so act." *Fiol*, 50 Cal. App. 4th at 1325 (citation omitted).  In other words, a "defendant can be held liable . . . only if he or she knew that a tort had been, or was to be, committed, and acted with the intent of facilitating the commission

---

or court-made.' . . . Because [Plaintiff] does not go beyond alleging a violation of common law, he fails to state a claim under the unlawful prong of § 17200.").

of that tort." *Gerard*, 204 Cal. App. 3d at 983 (citation omitted). But Plaintiffs do not claim that the Municipal Defendants knew of the underlying torts alleged against Clearview or acted with the purpose or intent of advancing the alleged tortious wrongs. And the Municipal Defendants' use of services does not constitute "substantial assistance or encouragement to the other to so act." Accordingly, Plaintiffs' claim fails for this additional reason.

### 2.    Infringement on Liberty of Speech

55.    Plaintiffs cannot state a claim for a violation of Article I, Section 2(a). As an initial matter, it is well-settled that there is no private right of action for damages under Article I, Section 2(a). "California tort law does not support recognition of a constitutional tort action for damages under" Article I, Section 2(a), and allowing such an action "would significantly change established tort law." *McAllister v. Los Angeles Unified Sch. Dist.*, 216 Cal. App. 4th 1198, 1215 (2013); *see also Degrassi v. Cook*, 58 P.3d 360, 363-65 (Cal. 2002); *Cuviello v. City and Cty. Of San Francisco*, 940 F. Supp. 2d 1071, 1099 (N.D. Cal. 2013); *Madrid v. H. Anglea*, No. 1:19-cv-01456-JLT, 2020 WL 1689709, at *5 (E.D. Cal. April 7, 2020).

56.    Plaintiffs' claim for injunctive relief is likewise not viable. Courts have explained that the "candidates for injunctive relief" under Article I, Section 2(a) are specific laws or municipal actions that "literally" restrain or abridge free speech. *McAllister,* 216 Cal. App. 4th at 1217. "There is no suggestion that [the Municipal Defendants] told [Plaintiffs] what to say or what not to say, or prevented [them] in any way from publishing [their] sentiments. Nor have [the Municipal Defendants] passed a law restraining or abridging speech." *Id*. Thus, Plaintiffs do not allege that the Municipal Defendants "literally" prevented them from speaking. To the contrary, Plaintiffs simply allege that the Municipal Defendants used a facial-recognition technology.[4]

57.    Finally, under the CTCA, a plaintiff may not bring a suit for monetary damages against a public entity *for any claim* unless the plaintiff first presented the claim to the California Victim

---

[4] Further a claim for monetary or injunctive relief under Article I, Section 2(a) is not viable because the Complaint fails to link Clearview's technology to any activity by the California-based government entities that chills free speech. The Complaint only states that *other* law enforcement agencies in *other* states may have used Clearview technology to "identify" people at protests, Ex. 1, ¶ 57, but nowhere do Plaintiffs allege facts to show that Clearview's technology was used by the named government entities to chill their speech.

Compensation and Government Claims Board ("Board"), and the Board either acted on the claim, or the time for doing so expired. *See* Cal. Gov't. Code § 905. "The Tort Claims Act requires that any civil complaint for money or damages first be presented to and rejected by the pertinent public entity." *Munoz v. California*, 33 Cal. App. 4th 1767, 1776 (1995) (citation omitted). Compliance with this "claim presentation requirement" constitutes an element of a cause of action for damages against a public entity. *State v. Superior Ct.*, 32 Cal. 4th 1234, 1244 (2004). The "submission of a claim to a public entity . . . is a condition precedent to a tort action and the failure to present the claim bars the action." *Id*. at 1240 (citation omitted). Here, Plaintiffs do not even attempt to comply with the CTCA, and fail to allege that they presented their claim and it was acted on—or rejected—by the Board before they initiated this proceeding. Accordingly, Plaintiffs' claims for money damages against the public entities fails.

### F.  There Would Be No Prejudice to Plaintiffs If Joinder Were Denied

58.    For the sixth factor of the 28 U.S.C. § 1447(e) analysis, courts may consider the potential prejudice to the plaintiff if joinder is not allowed. Requiring Plaintiffs to pursue their claims against the California-based government agencies "in a separate litigation in state court would not prejudice" them in any meaningful way. *Waring*, 2019 WL 3424955, at *6.

59.    The only potential prejudice for Plaintiffs would be "litigating two suits with some overlapping facts"—but in this case, the claims against the Municipal Defendants "are not entangled enough with the [claims against Clearview] to cause significant prejudice." *Id*. Quite the opposite, the allegations and claims against Clearview and the government entities are separate and distinct. *See* Ex. 1, ¶¶ 76-98. Moreover, Plaintiffs "could have asserted the new claims at the outset of the suit if they [were] intimately connected to the current claims"—their not doing so further underscores that litigating the claims separately would not prejudice Plaintiffs. *Waring*, 2019 WL 3424955, at *6.

60.    In stark contrast, Clearview would be severely prejudiced if this case were not removed to federal court because Clearview would be forced to litigate nearly identical factual allegations and claims against the same putative class before both the MDL Court and County of Alameda Superior Court. This could lead to inconsistent rulings on identical issues and would require duplicative discovery at great cost to Clearview.

### G.   The Remaining Factors All Weigh Against Joinder

61.    The final factors of "the closeness of the relationship between the new and the old parties, the effect of an amendment on the court's jurisdiction, and the new party's notice of the pending action" all highlight the fraudulent nature of Plaintiffs' joinder of the Municipal Defendants. *In re Outlaw Lab., LP Litig.*, 2020 WL 434477, at *4. First, there is no "closeness" between Clearview and the government entities: they do not have a corporate, insurer-insured, or employer-employee relationship, or anything more than alleged arms'-length commercial relationship. Second, the Complaint asserts only the barest, tack-on claims against the Municipal Defendants, supported by minimal factual allegations, which fail to provide adequate notice of the claims alleged against them. Ex 1, ¶¶ 73-75, 91-98. And third, as discussed above, the effect of Plaintiffs' refiled Complaint and fraudulent joinder of non-diverse parties would be to defeat this Court's jurisdiction, which is their motive in joining the Municipal Defendants as defendants.

62.    For all these reasons, the Court should conclude that these government entities were fraudulently joined, and that removal is appropriate because there is complete diversity between the properly joined parties—namely, Plaintiffs and Clearview.

## III.   The Municipal Defendants Are Procedurally Misjoined

63.    As an independent basis for removal, there is no question that the Municipal Defendants were *procedurally* misjoined. As a result, the claims against the Municipal Defendants should be severed and remanded to state court.

64.    Courts have recognized that the joinder of non-diverse and minimally-relevant defendants for the purpose of precluding removal may be just as fraudulent as the joinder of non-diverse defendants against whom plaintiff has no claim. *Sutton v. Davol, Inc.*, 251 F.R.D. 500, 507 (E.D. Cal. 2008) (severing the claims against non-diverse defendants as fraudulently misjoined). For example, *Sutton* involved two types of claims against two categories of defendants: (1) strict products liability claims against a diverse drug manufacturer that developed an allegedly defective patch and (2) medical malpractice claims against non-diverse healthcare providers for implanting the patch in a patient. *Id*. at 502. The court concluded that the defendants and claims were separate and unrelated, even though both sets of claims centered on an allegedly defective patch. *Id*. at 505. Specifically, the court explained that the claims against the drug

manufacturer were based on the development and manufacture of the patch, while the claims against the healthcare providers were based on the decision to use and implant the patch in a patient. *Id*. The non-diverse healthcare providers did not develop or manufacture the patch, and the plaintiffs did not allege products liability claims against them. The court determined that these two sets of claims and defendants were not connected, and that the non-diverse healthcare providers were fraudulently misjoined for the purpose of precluding removal of the products liability action to federal court. *Id*. As a result, the court did not consider citizenship of those non-diverse healthcare providers in deciding whether the products liability action could be removed. *Id*.

65.    Moreover, the *Sutton* court acknowledged that similar products liability claims against the drug manufacturer were already pending in a multidistrict litigation in Rhode Island, and that in the removal and misjoinder analysis, "Defendants' legal and factual position is compelling, especially in the context of MultiDistrict Litigation." *Id*. at 504. The court's decision to sever and remand the state law claims against the non-diverse defendants was thus proper "so as to preserve the removing Defendants' right to removal in the remaining multidistrict action and to preserve the interests of judicial expediency and justice so that all pre-trial discovery on the products liability case can be coordinated in a single forum." *Id*. at 505.

66.    *Sutton* is directly on point here. As in *Sutton*, the Complaint alleges no common causes of action against Clearview and the Municipal Defendants. Plaintiffs claim that Clearview violated the law by allegedly "acquiring, storing, and selling their likenesses." Ex. 1, ¶ 1. Plaintiffs do not claim that the Municipal Defendants participated in this alleged conduct, but instead make separate and unrelated allegations that those entities unlawfully "used" Clearview's technology. *Id*. ¶ 21. That is *precisely* the situation that was faced by the *Sutton* court when it held that products liability claims against a drug manufacturer for developing a product, on the one hand, and separate medical malpractice claims against non-diverse healthcare providers for using that product, on the other hand, should not be joined. And further, Plaintiffs are already part of a putative California subclass before the MDL Court, where the misappropriation of likeness, constitutional privacy right, and UCL claims are currently being litigated. Accordingly, preserving Clearview's right of removal is proper to promote the interests of judicial economy and justice.

## IV.    The Amount In Controversy Exceeds $75,000

67.    Until and unless a plaintiff challenges removal, an assessment of the amount in controversy is based solely on the allegations of the complaint, rather than "evidentiary submissions." *Dart Cherokee Basin Operating Co v. Owens*, 574 U.S. 81, 84 (2014).  In other words, a defendant need not offer evidence to substantiate the amount in controversy; rather, a "notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Id*. at 89.  "Evidence establishing the amount is required . . . only when the plaintiff contests, or the court questions, the defendant's allegation." *Id.*; *see also LaCross v. Knight Transp., Inc.*, 775 F.3d 1200, 1202 (9th Cir. 2015) (holding that a "preponderance of the evidence" standard applies only *after* "a defendant's assertion of the amount in controversy is challenged") (citations and internal quotation marks omitted).

68.    "In measuring the amount in controversy, a court must assume that the allegations of the complaint are true and that a jury will return a verdict for the plaintiff on all claims made in the complaint." *Korn v. Polo Ralph Lauren Corp.*, 536 F. Supp. 2d 1199, 1205 (E.D. Cal. 2008).  To satisfy the amount in controversy requirement, a defendant must establish only that "the potential damages could exceed the jurisdictional amount."  *Rea v. Michaels Stores Inc.*, 742 F.3d 1234, 1239 (9th Cir. 2014) (quoting *Lewis v. Verizon Commc'ns, Inc.*, 627 F.3d 395, 397 (9th Cir. 2010)).  The "amount in controversy is not a prospective assessment of a defendant's liability"; rather, "it is the amount at stake in the underlying litigation." *Chavez v. JPMorgan Chase & Co.*, 888 F.3d 413, 417 (9th Cir. 2018) (internal citations and internal quotation marks omitted).

69.    In other words, "[t]he ultimate inquiry is what amount is put 'in controversy' by the plaintiff's complaint, not what a defendant will actually owe." *Korn*, 536 F. Supp. 2d at 1205; *see also, e.g.*, *Greene v. Harley-Davidson, Inc.*, 965 F.3d 767, 772 (9th Cir. 2020) ("[T]he amount in controversy is the 'amount *at stake* in the underlying litigation.'  'Amount at stake' does not mean likely or probable liability; rather it refers to *possible* liability." (second emphasis added)) (quoting *Gonzales v. CarMax Auto Superstores, LLC*, 840 F.3d 644, 648 (9th Cir. 2016)); *Rippee v. Boston Mkt. Corp.*, 408 F. Supp. 2d 982, 986 (S.D. Cal. 2005) ("It's not a question as to what you would owe.  It's a question as to what is in controversy.") (citation omitted).  For that reason, the Ninth Circuit has made clear that a court cannot

"delve into the merits" or conduct "a fact-based analysis of the merits" in assessing the amount in controversy. *Greene*, 965 F.3d at 774.

70.     Without conceding any merit to Plaintiffs' allegations, causes of action, claim for injunctive relief, or claims for compensatory damages, or attorney's fees, the amount placed in controversy by Plaintiffs' complaint satisfies 28 U.S.C. § 1332(a)'s jurisdictional threshold.

71.     Although Plaintiffs' Complaint does not specify a precise amount of damages, Plaintiffs seek to "enjoin [Clearview] from illegally acquiring, storing, and selling their likenesses, and the likenesses of millions of Californians." Ex. 1, ¶ 1.  "In actions seeking declaratory or injunctive relief, it is well established that the amount in controversy is measured by the value of the object of the litigation." *Cohn v. Petsmart, Inc.*, 281 F.3d 837, 840 (9th Cir. 2002) (quoting *Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 347 (1977)); *see also Rose v. J.P. Morgan Chase, N.A.*, No. 12-225, 2012 WL 892282, at *2–3 (E.D. Cal. Mar. 14, 2012) (denying motion to remand where value of injunctive relief sought exceeded the amount in controversy).

72.     In multi-plaintiff cases like this one, the appropriate method of valuing the cost of compliance with an injunction is to look at the "cost to the defendant[] of an injunction running in favor of one plaintiff." *In re Ford Motor Co./Citibank (S. Dakota), N.A.*, 264 F.3d 952, 959 (9th Cir. 2001).  Here, the Complaint seeks public injunctive relief prohibiting Clearview from "acquiring, storing, and selling . . . the likenesses of millions of Californians." Ex. 1, ¶ 1.

73.     The amount in controversy therefore includes "the cost [to Clearview] of complying with [the] requested injunctive relief." *Gen. Dentistry for Kids, LLC v. Kool Smiles, P.C.*, 379 F. App'x 634, 635 (9th Cir. 2010).  Here, such compliance could only be achieved through an overhaul of Clearview's business model, which according to the Complaint entails the "gather[ing], cop[ying], and sav[ing]" of the likenesses of "Plaintiffs and all California residents" and the use of such likenesses in a "facial recognition technology" (Ex. 1, ¶¶ 3-5)—precisely what each Plaintiff seeks to enjoin.  The cost to Clearview of such overhaul would easily exceed $75,000 by many multiples.  *See, e.g.*, *Lovell v. State Farm Mut. Auto. Ins. Co.*, 466 F.3d 893, 898 (10th Cir. 2006) ("State Farm has shown that its costs of compliance running to any single Plaintiff or putative class member would exceed $75,000 because the requested relief would

require it to make significant changes to its business practices . . . . Because the compliance cost to any single plaintiff exceeds the requisite amount in controversy, the jurisdictional threshold is met and the district court properly exercised subject matter jurisdiction over this case."). The requested injunctive relief alone thus satisfies the jurisdictional minimum.

74. In addition to injunctive relief, each Plaintiff seeks compensatory damages for the alleged "mental anguish" they have suffered "as a result of the invasion of their privacy." Ex. 1, ¶¶ 69-70; *see also id.* ¶ 87. Again, without conceding any merit to Plaintiffs' allegations or causes of action, compensatory damages awarded per-Plaintiff could easily exceed $75,000 in aggregate.

75. Plaintiffs also seek to recover attorneys' fees. *See* Ex. 1, Prayer for Relief. To assess the amount in controversy, the Court is not limited to considering fees incurred at the time of removal; rather, "a court must include future attorneys' fees recoverable by statute or contract when assessing whether the amount-in-controversy requirement is met." *Fritsch v. Swift Transp. Co. of Ariz., LLC*, 899 F.3d 785, 794 (9th Cir. 2018) (holding that the amount in controversy includes fees likely to be incurred after removal); *see also Bayol v. Zipcar, Inc.*, No. 14-2483, 2015 WL 4931756, at *7 (N.D. Cal. Aug. 18, 2015) ("The amount in controversy can include . . . attorneys' fees."). Here, each Plaintiff's attorney's fees could be significant if Plaintiffs pursue this litigation through trial.

76. When aggregated, the injunctive relief and compensatory damages demanded by any one Plaintiff individually, combined with the attorneys' fees Plaintiffs' counsel may recover for any one Plaintiff individually, exceed the $75,000 threshold under 28 U.S.C. § 1332(a).

## REMOVAL IS TIMELY

77. Under 28 U.S.C. § 1446(b), notice of removal of a civil action must be filed within thirty (30) days of the defendant's receipt of service of the summons and the Complaint. Clearview was served on May 13, 2021. This date, June 14, 2021, is the first business day following the 30-day period from May 13, 2021. This Notice of Removal is accordingly timely.

## OTHER REQUIREMENTS FOR REMOVAL ARE MET

78. Clearview has not had any attorneys enter an appearance, file any responsive pleadings, or file any papers responding to the Complaint in the state court.

79.     Clearview does not need the consent of the fraudulently joined parties for removal.  *See* 28 U.S.C § 1446(a) ("all defendants who have been *properly joined* and served must join in or consent to the removal of the action" (emphasis added)); *Emrich v. Touche Ross & Co.*, 846 F.2d 1190, 1193 n.1 (9th Cir. 1988); *Sutton v. Davol, Inc.*, 251 F.R.D. 500, 506 (E.D. Cal. 2008) (holding that non-diverse defendants were fraudulently misjoined and lack of consent from the misjoined defendants was not fatal to removal).

80.     Clearview will promptly give written notice of the filing of this Notice of Removal to all parties, and a copy of this Notice will be filed with the Clerk of County of Alameda Superior Court as required by 28 U.S.C. § 1446(d).

## CONCLUSION

WHEREFORE, Notice is given that this action is removed from County of Alameda Superior Court to the United States District Court for the Northern District of California.

Dated:  June 14, 2021                                    JENNER & BLOCK LLP

/s/ Kate T. Spelman
Kate T. Spelman


*Attorney for Defendant*
Clearview AI, Inc.

1

**PROOF OF SERVICE**

2

I am a citizen of the United States and resident of the State of California.  I am employed in Los

3

Angeles, California.  My business address is 633 West 5th Street, Suite 3600, Los Angeles, CA 90071-

4

2054.  I am over the age of eighteen years, and not a party to the action.  On June 14, 2021, I caused to be

5

served the following documents in the manner described below:

6

7

CLEARVIEW AI, INC.'S NOTICE OF REMOVAL

8

☑        (BY OVERNIGHT CLASS MAIL): I am personally and readily familiar with the

9

business practice of Jenner & Block LLP for collection and processing of correspondence
for overnight delivery, and I caused such document(s) described herein to be deposited

10

for delivery to a facility regularly maintained for overnight delivery.

11

On the following parties in this action:

12

BRAUNHAGEY & BORDEN LLP                      *Counsel for Plaintiffs Steven Renderos, Valeria*

13

Ellen V. Leonida                                            *Thais, Suárez Rojas, Reyna Maldonado, Lisa*
leonida@braunhagey.com                             *Knox, Mijente Support Committee, and Norcal*

14

Matthew Borden                                           *Resist Fund*
borden@braunhagey.com

15

J. Noah Hagey
hagey@braunhagey.com

16

Athul K. Acharya
acharya@braunhagey.com

17

Gunnar K. Martz
martz@braunhagey.com

18

351 California St., Tenth Floor

19

San Francisco, CA 94104

20

JUST FUTURES LAW
Sejal R. Zota

21

sejal@justfutureslaw.com
Dinesh McCoy

22

dinesh@justfutureslaw.com
95 Washington St., Suite 104-149

23

Canton, MA 02021

24

I declare under penalty of perjury under the laws of the United States of America that the foregoing

25

is true and correct.  Executed on June 14, 2021, in Los Angeles, California.

26

27

_____/s/ Kate T. Spelman_____
Kate T. Spelman

28